## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 48475

Re: Petition for Writ of Prohibition. )
------------------------------------------------- )
ROXANA BECK, )
)
  Petitioner, )
)
v. )
)
ELMORE COUNTY MAGISTRATE )
COURT; HONORABLE THEODORE )
FLEMING, Magistrate Judge; )
HONORABLE BRENT FERGUSON, )
Magistrate Judge, )
)
  Respondents. )
)

**Boise, May 2021 Term**

**Opinion Filed: June 24, 2021**

**Melanie Gagnepain, Clerk**

---

Petition for Writ of Prohibition.

Writ of prohibition <u>granted.</u>

Ratliff Law Offices Chtd., Mountain Home, for Petitioner. Peter A. Wood argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondents. Kenneth K. Jorgensen argued.

---

BURDICK, Justice.

This is a case involving important constitutional limitations on the imposition and collection of fines, court costs, and other fees by the courts of this State. After failing to pay fines, court costs, and restitution owed in a criminal misdemeanor case, Roxana Beck was arrested and held in jail for seven days pursuant to a warrant of attachment.[1] Following her release, Beck, seeking to invoke its original jurisdiction, filed a petition for a writ of prohibition with the Idaho Supreme Court against the Elmore County magistrate court, and two Elmore County magistrate judges (collectively "Respondents" or "magistrate court"). In the petition,

---

[1] A writ of attachment is a writ that authorizes the arrest of a person or the seizure of property. In this case, it authorized Beck's arrest and was akin to an arrest warrant.

1

Beck alleged that the magistrate court exceeded its jurisdiction in initiating criminal contempt proceedings and issuing a warrant of attachment against her after she failed to pay fines, court costs, and restitution. Specifically, Beck argues that the magistrate court exceeded its jurisdiction by issuing the warrant of attachment without making an adequate probable cause determination, conducting an ability-to-pay analysis, and considering whether reasonable cause existed to believe that she would have disregarded a written notice to appear. Beck further argues that the magistrate court exceeded its jurisdiction by issuing a warrant of attachment with an unconstitutional bail schedule and initiating a contempt prosecution against her based upon a motion and affidavit filed by the deputy court clerk. Beck requests that the magistrate court be enjoined from issuing future warrants of attachment, against her or other similarly situated parties, in the same manner and with the same alleged deficiencies as the first warrant.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2020, Roxana Beck pleaded guilty to frequenting a place where controlled substances were used, sold, or manufactured, which is a misdemeanor under Idaho Code section 37-2732(d). At sentencing, Beck's attorney requested that fines and fees in the case be waived, or alternatively, that any payment agreement be "as low [as] possible" because Beck's hours of work at Burger King had recently been reduced. Beck was not required to serve any time in jail as part of her sentence, but, despite her request, was ordered to pay $150 in fines, $197.50 in court costs, and $291 in restitution to the Idaho State Lab. Beck signed a "Deferred Payment Agreement" that required her to pay $25 a month towards the total amount owed, with her first payment to be made on April 1, 2020. The agreement also contained a clause indicating that if Beck missed a payment the entire sum would become due and that a warrant may be issued for her arrest for failure to pay.

About three months after the first payment was due, a deputy clerk of the district court in Elmore County filed a "Motion and Affidavit in Support of Contempt Proceedings" alleging that Beck had failed to pay the fines, court costs, and restitution and was in contempt of court. The affidavit asserted that the deputy clerk had knowledge of the judgment entered against Beck, including her obligation to pay $638.50. The deputy clerk also asserted that she had examined

2

the records of the court and determined that Beck had been served with a copy of the judgment and violated the judgment by failing to pay $643.72.[2]

That same day, an Elmore County magistrate judge issued a warrant of attachment for contempt against Beck. The warrant indicated that, based upon the court's records and the deputy clerk's affidavit, probable cause existed to believe that Beck was in contempt of court for violating the court's order requiring payment of the fines, court costs, and restitution. The warrant also indicated there were "reasonable grounds to believe the Defendant [would] disregard a written Notice to Appear." Finally, the warrant gave Beck the choices of posting $6,400 as bail and appearing in court at a later date, paying $643.72 in cash to satisfy the amount owed and to expunge the contempt (and the writ of attachment), or staying in jail and appearing in court on the next judicial day.

Several months later, on October 29, 2020, Beck was arrested in Canyon County on the Elmore County warrant of attachment. Beck was arraigned in Canyon County the next day, on October 30, 2020, and was held until she either posted bond or could be transported to Elmore County. Beck was transported to Elmore County on November 3, 2020, and appeared in court the next day for an arraignment hearing. At the hearing, Beck entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to a charge of criminal contempt and was sentenced to five days in jail with five days' credit for time already served. Beck was also re-ordered to pay the outstanding fines, court costs, and restitution from her misdemeanor conviction. Because she was held in jail for two days longer than the statutory maximum, Beck was granted a $70 credit, $35 for each day, towards her outstanding balance. Beck also signed a new "Deferred Payment Agreement," requiring her to make $25 monthly payments towards the outstanding balance owed in her misdemeanor case, with the first payment due on December 15, 2020. The agreement contained an identical clause explaining that if Beck missed a payment the entire sum would become due and a warrant may be issued for her arrest for failure to pay. Beck was released that same day.

On December 4, 2020, Beck filed a petition for writ of prohibition before this Court, seeking an order prohibiting Respondents from issuing future warrants of attachment against her or other similarly situated individuals in the same manner and with the same alleged deficiencies

---

[2] The deputy clerk's affidavit did not explain the discrepancy between the amount sought and the amount Beck was ordered to pay at sentencing.

described above. Shortly thereafter, Respondents filed a motion to dismiss the petition for writ of prohibition as moot, arguing that the Elmore County magistrate court had revised its criminal contempt policies. After due consideration, this Court issued a preliminary writ prohibiting Respondents from issuing warrants of attachment against Beck or any other individuals and ordered Respondents to make an appearance by filing a verified answer and response brief to the petition for writ of prohibition.

On January 15, 2021, Respondents filed their verified answer and response brief. On January 29, 2021, Beck filed a reply brief. On February 16, 2021, this Court granted the State Appellate Public Defender leave to submit a brief as *amicus curiae* in support of Beck's petition, which was subsequently filed on March 2, 2021. On April 2, 2021, this Court granted leave to the Fines and Fees Justice Center; the Institute for Justice; the University of California, Berkeley School of Law Policy Advocacy Clinic; the ACLU of Idaho; the CATO Institute; the ACLU Racial Justice Program; Judith Resnik; Anna VanCleave; and Brian Highsmith ("*Amici*") to file a brief as *amicus curiae* in support of Beck's petition. The *Amici* filed a brief on April 9, 2021. The parties argued before this Court on May 7, 2021.

## II.    STANDARD OF REVIEW

This Court has original jurisdiction to issue writs of prohibition. Idaho Const. art. V, § 9. "The writ of prohibition is not a remedy in the ordinary course of law, but is an extraordinary remedy." *Maxwell v. Terrell*, 37 Idaho 767, 774, 220 P. 411, 413 (1923). A writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." I.C. § 7-401. "In defining the writ of prohibition, the Idaho Code merely codifies the characteristics of the common law writ." *Clark v. Ada Cnty. Bd. of Comm'rs*, 98 Idaho 749, 752, 572 P.2d 501, 504 (1977) (citing *Stein v. Morrison*, 9 Idaho 426, 75 P. 246 (1904)). The writ of prohibition is a discretionary remedy under Idaho common law, granted only when this Court concludes that the remedy is appropriate. *Id.* (citing *Rust v. Stewart*, 7 Idaho 558, 64 P. 222 (1901)).

## III.    ANALYSIS

**A.  We decline to dismiss Beck's petition because of a procedural defect in its verification.**

As a preliminary matter, Respondents argue that Beck's petition should be dismissed because it has not been personally verified by Beck. Beck contends that the electronic filing of her petition by her defense counsel serves as an automatic verification pursuant to the Idaho

4

Rules for Electronic Filing and Service ("IREFS"). Alternatively, Beck requests that this Court excuse any defect in the verification of her petition.

The IREFS authorize an attorney to electronically file a petition for a special writ with this Court on behalf of their client. IREFS 2(f), 4(a)(1). However, filing a petition on behalf of a client is not the same as verifying the petition. Verification is "a formal declaration made in the presence of an authorized officer, such as a notary public." *BMC West Corp. v. Horkley*, 144 Idaho 890, 897, 174 P.3d 399, 406 (2007) (quoting Black's Law Dictionary (8th ed. 2004)). Merely because a petition has been filed, does not necessarily mean that it has been properly verified. Although, the IREFS are silent with respect to verification of petitions, an electronically filed special writ must be otherwise compliant with the Idaho Appellate Rules. IREFS 21. Idaho Appellate Rule 5, in turn, mandates that "petitions [be] verified by the party beneficially interested therein." I.A.R. 5(c). In sum, the mere fact that an attorney electronically files a petition on behalf of a client does not automatically satisfy the verification requirement. As such, the petitioner herself, as the beneficially interested party, must ordinarily verify her electronically filed petition.

However, failure to comply with the procedural requirement that a petitioner personally verify his or her own petition is not necessarily fatal to a petition, especially where there are no disputes of material fact. In some instances, especially where important constitutional protections are at stake, both this Court and the Court of Appeals have relaxed the personal verification requirement. For example, with respect to verifying a petition for a writ of habeas corpus, the Court of Appeals has held that verification is not a jurisdictional prerequisite, but only a procedural requirement. *Freeman v. State, Dep't of Corr., Comm'n of Pardons & Paroles*, 116 Idaho 985, 986–87, 783 P.2d 324, 325–26 (Ct. App. 1989). Thus, "[c]aution should be exercised . . . to insure that [dismissal for improper verification] does not deny the constitutional protection of habeas corpus to an individual with a legitimate grievance on purely technical grounds." *Id.* at 987, 783 P.2d at 326.

This Court has taken a similar approach for the verification of petitions for writs of mandamus. *See Leavitt v. Craven*, 154 Idaho 661, 665–66, 302 P.3d 1, 5–6 (2012). A writ of mandamus is a counterpart of the writ of mandate, subject to the same procedural rules. *See Cronan v. Dist. Ct. of Kootenai Cnty.*, 15 Idaho 184, 202, 96 P. 768, 773 (1908); I.A.R. 5. In *Leavitt*, a defendant filed a writ of mandamus seeking to direct the Idaho Commission of Pardons

5

and Parole to schedule a hearing on his petition for commutation and publish notice thereof. 154 Idaho at 662, 302 P.3d at 2. The Commission challenged the petition on several grounds, including that it was verified by the petitioner's attorney but not the petitioner himself. *Id.* at 665–66, 302 P.3d at 5–6. This Court considered the defect but noted that it was "easily curable" and addressed the merits of the petition in "the parties' interest in an expedited resolution of th[e] matter." *Id.* at 666, 302 P.3d at 6.

Like in *Leavitt*, the petition here has been verified by Beck's defense counsel, but not Beck herself. However, this defect is easily curable and, considering the gravity of the constitutional claims implicated in Beck's petition, outweighed by the interest in addressing the merits of this matter. Furthermore, the purpose of the personal verification requirement— establishing the veracity of the facts alleged in the petition—is not advanced by strict adherence to the requirement where, as here, there are no disputed material facts. At oral argument, Respondents argued that at least one dispute of material fact existed with respect to whether Beck's failure to pay her fines and fees was willful. However, both parties acknowledge that the warrant of attachment issued by the magistrate court did not include any findings regarding willfulness. Therefore, the question before this Court is not whether Beck's failure to pay was willful, but whether the magistrate court was required to make such a finding in issuing the warrant of attachment. As such, without a dispute as to any material fact, the importance of the procedural mechanism of verifying the petition is of diminished value.

In contrast, Beck's petition raises legitimate constitutional concerns regarding Respondents' issuance of the warrant of attachment against her. Numerous individuals and entities have weighed in as *amici*. The dispute will benefit from our addressing it now as opposed to in the future because it is likely to reoccur, if not in Elmore County, then in a sister county. Thus, in accord with the holding in *Leavitt*, and in light of the constitutional issues of critical importance in this case, we will consider Beck's petition despite any procedural defects in its verification.

**B. Beck's petition for a writ of prohibition is not moot.**

Shortly after Beck initiated this action by filing her petition for a writ of prohibition, Respondents changed their policy regarding criminal contempt in misdemeanor cases.

Respondents subsequently filed a motion to dismiss Beck's petition, arguing that the new policy[3] rendered her arguments moot. The decision of the magistrate court and the administrative district judge to make proactive policy changes when presented with potential constitutional concerns is commendable. However, we hold that the recent policy changes do not render all aspects of Beck's petition moot, and even where the alleged deficiencies have been addressed by the new policy there is substantial public interest in addressing the issues presented in this case.

Issues are moot where they do not "'present a real and substantial controversy that is capable of being concluded' by judicial relief." *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010) (quoting *Koch v. Canyon County*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008)). Even if an issue is moot, this Court may consider the issue if one of three exceptions applies: "(1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest." *Id.*

Here, the new policy alleviates many of the concerns raised in Beck's petition for a writ of prohibition. However, several of the issues concerning probable cause, ability-to-pay, and the extent to which an affidavit intended to support a warrant of attachment must provide evidence to the magistrate court are not fully addressed by the new policy. To the extent that some of the issues in Beck's petition are moot, we nonetheless address them in furtherance of a substantial public interest in the uniformity and constitutional validity of court processes throughout Idaho. We recognize that other counties in Idaho may also have antiquated procedures for addressing a defendant's failure to pay fines and fees that do not take into account the constitutional evolution that has occurred in recent years. As such, we will address Beck's petition on the merits.

## C. Beck's petition for a writ of prohibition is granted.

The writ of prohibition is an extraordinary remedy, which should be issued with caution. *Gibbons v. Cenarrusa*, 140 Idaho 316, 318, 92 P.3d 1063, 1065 (2002) (citing *Crane Creek Country Club v. City of Boise*, 121 Idaho 485, 487, 826 P.2d 446, 448 (1990)). A writ of prohibition is only issued by this Court upon a two-part showing by the petitioner that: (1) "the tribunal, corporation, board[,] or person is proceeding without or in excess of the jurisdiction of

---

[3] The new policy is appended to this opinion. Although we ultimately hold that it does not address every concern raised in Beck's petition, the new policy is a strong first step in the handling of cases where a defendant has failed to pay court-ordered fines and fees.

such tribunal[,] corporation, board, or person;" and (2) "there is not a plain, speedy, and adequate remedy in the ordinary course of law." *Schweitzer Basin Water Co. v. Schweitzer Fire Dist.*, 163 Idaho 186, 189, 408 P.3d 1258, 1261 (2017) (quoting *State v. Dist. Ct. of Fourth Jud. Dist.*, 143 Idaho 695, 699, 152 P.3d 566, 570 (2007)) (internal quotations omitted). The burden of proof is on the petitioner as to both requirements. *Id.*

1. The Elmore County Magistrate Court acted without or in excess of its jurisdiction in issuing the warrant of attachment against Beck.

The term "jurisdiction" has a specific meaning in the context of a writ of prohibition. *Schweitzer Basin Water Co.*, 163 Idaho at 189, 408 P.3d at 1261. That is, "when used in reference to a writ of prohibition," the word "jurisdiction" includes "power or authority conferred by law." *Henry v. Ysursa*, 148 Idaho 913, 915, 231 P.3d 1010, 1012 (2008) (citations omitted). Thus, in the context of a writ of prohibition, the question of jurisdiction is not merely a question of whether the tribunal had subject matter and personal jurisdiction, but also whether the tribunal had the lawful authority to take the action that it did.

On that point, Respondents argue that Idaho's courts "have the constitutional, statutory and inherent authority to compel obedience with their lawful orders." *See In re Weick*, 142 Idaho 275, 278, 127 P.3d 178, 181 (2005) (citing *Marks v. Vehlow*, 105 Idaho 560, 566, 671 P.2d 473, 479 (1983)). Indeed, Idaho's courts have the power to enforce their own *lawful* orders. *Marks*, 105 Idaho at 566, 671 P.2d at 479 (explaining that the power of the courts to enforce their own orders stems from article V, section 2 of the Idaho Constitution, several Idaho statutes, and the common law). However, such authority does not extend to orders that are unlawful, entered in contravention of procedures prescribed by court rule or in violation of constitutional protections. *See, e.g.*, *Maloney v. Zipf*, 41 Idaho 30, 33, 237 P. 632, 633 (1925) (explaining that any portion of a judgment or decree that goes beyond what a court was authorized to decide is void on its face); *State v. Kesling*, 155 Idaho 673, 676–77, 315 P.3d 861, 864–65 (Ct. App. 2013) (reasoning that a district court acted in excess of its jurisdiction when it imposed a term of probation that exceeded the statutory maximum). Thus,

> A writ of prohibition is proper, not only in cases where the lower tribunal has no legal authority to act at all, but also in cases where the inferior tribunal, although having general jurisdiction over a particular class of cases, has exceeded its jurisdiction or its authorized powers in the particular case. A court vested with supervisory control should grant a writ of prohibition when the lower court is acting outside its jurisdiction, and there is no remedy through an application to an intermediate court.

8

A court may be prohibited from acting in excess of its jurisdiction when it proceeds in a different manner than that prescribed by a relevant statute.

63C Am. Jur. 2d *Prohibition* § 43 (2021) (footnotes omitted).

Here, Beck argues that the magistrate court acted without or in excess of its jurisdiction in five ways: (1) by issuing a warrant of attachment without probable cause; (2) by issuing a warrant of attachment for failing to pay fines in a criminal case without first conducting an ability-to-pay analysis; (3) by issuing a warrant of attachment without making a factual determination that it was reasonable to believe that she would disregard a written notice to appear; (4) by issuing a warrant with an unconstitutional bail schedule; and (5) by initiating a criminal contempt prosecution against her based upon a motion and affidavit filed by the deputy court clerk. Each of Beck's arguments is based upon the magistrate court's failure to act within the bounds of applicable criminal rules, statutory requirements, or constitutional principles in issuing the warrant of attachment. As such, Beck's arguments are jurisdictional in nature. We address each in turn.

*a. The magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment against Beck without probable cause.*

First, Beck argues that the magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment without probable cause. Specifically, Beck argues that the deputy clerk's affidavit was not sufficient to support the magistrate court's probable cause determination because it provided no evidence as to whether Beck's failure to pay was willful.

The Fourth Amendment to the United States Constitution, as applied against the States through the Due Process Clause of the Fourteenth Amendment, and article I, section 17 of the Idaho Constitution protect Idahoans from "unreasonable searches and seizures." U.S. Const. amends. IV, XIV; Idaho Const. art. I, § 17; *see also State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)) ("This guarantee has been incorporated through the Due Process Clause of the Fourteenth Amendment to apply to the states."). Furthermore, both constitutional provisions require that no warrant be issued without probable cause, "supported by Oath or affirmation," U.S. Const. amend. IV, or "shown by affidavit." Idaho Const. art. I, § 17. The arrest and pretrial detention of an individual is impermissible under the Fourth Amendment to the United States Constitution and article I, section 17 of the Idaho Constitution where the arrest is not based upon a probable cause finding by a "neutral and detached magistrate" made either before or shortly after the arrest. *State v.*

*Watson*, 99 Idaho 694, 696, 587 P.2d 835, 837 (1978); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975).

In accord with these constitutional principles, Idaho Criminal Rule 4 provides that a magistrate court may issue an arrest warrant "only after making a determination that there is probable cause to believe that an offense has been committed and that the defendant committed it." I.C.R. 4(a). Likewise, a warrant of attachment may only be issued if the magistrate court determines that "there is probable cause to believe that the respondent committed the contempt." I.C.R. 42(e)(1)(A).[4] A magistrate court's determination as to the existence of probable cause is based upon "the facts set forth in the affidavit or any recorded testimony given in support of the warrant." *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993) (citing *State v. Oropeza*, 97 Idaho 387, 545 P.2d 475 (1976)). This principle applies equally to arrest warrants. *See State v. Elison*, 135 Idaho 546, 549–50, 21 P.3d 483, 486–87 (2001) (quoting *State v. Porter*, 563 P.2d 829, 831 (Wash. 1977)) (noting that there is "no reason to apply a different test in the issuance of a search warrant than an arrest warrant" and applying the same rule to hearsay in an affidavit supporting an arrest warrant as applies to supporting affidavits for search warrants); *accord* I.C.R. 4(a)(1) (explaining that a magistrate court "may rely on information provided in the form of an affidavit or sworn oral statement" in issuing an arrest warrant). Likewise, when it comes to probable cause, there is no reason to apply a different test to the issuance of a warrant of attachment than to an arrest warrant. Whether an arrest is made pursuant to a warrant of attachment or an arrest warrant, the arrest is a seizure as contemplated by the Fourth Amendment and article I, section 17. As such, the probable cause requirement applies equally to both types of warrants.

Probable cause is defined as the possession of information that "would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty." *State v. Alger*, 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979) (citations omitted). A magistrate court must consider the "totality of the circumstances" set forth in the supporting affidavit in determining whether probable cause exists in a particular case. *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983) (citing *Illinois v. Gates*, 462 U.S. 213, 237–38 (1983)). In reviewing a magistrate court's findings, this Court considers whether the

---

[4] In addition to a probable cause determination, the magistrate court is also required to determine that "there are reasonable grounds to believe that the respondent will disregard a written notice to appear" before issuing a warrant of attachment. I.C.R. 42(e)(1)(B).

supporting affidavit provided the magistrate court with "a substantial basis for concluding that probable cause existed." *Id.* The magistrate court's finding regarding probable cause "cannot be a mere ratification of the bare conclusions of others." *Wolf v. State*, 152 Idaho 64, 68, 266 P.3d 1169, 1173 (Ct. App. 2011) (citing *Gates*, 462 U.S. at 239). Thus, a conclusory affidavit, containing no details regarding the underlying circumstances, cannot support a probable cause determination. *Id.* (citing *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965)).

Contempt can take on many different forms. *See* I.C. § 7-601 (listing numerous acts that constitute contempt). With respect to court orders, contempt is defined as willful "disobedience of any lawful judgment, order or process of the court." I.C. § 7-601(5); *see also Wechsler v. Weschler*, 162 Idaho 900, 916, 407 P.3d 214, 230 (2017) (quoting *In re Weick*, 142 Idaho 275, 281, 127 P.3d 178, 184 (2005)) (explaining that this Court has previously held that "to find contempt, it must be shown that the accused *willfully* disobeyed a court order"). Likewise, Idaho Criminal Rule 33(g)(1) provides that "[a] person who has been sentenced by the court following a plea of guilty . . . may be found in contempt for failure to pay a fine, fee, or costs only if the court finds that the person has willfully refused to make payment, or has failed to make sufficient bona fide efforts to legally acquire the resources to make payment." "Willful" is defined as "an indifferent disregard of duty or a remissness and failure in performance of a duty but not a deliberately and maliciously planned dereliction of duty." *Weschler*, 162 Idaho at 230, 407 P.3d at 916 (quoting *In re Weick*, 142 Idaho at 281, 127 P.3d at 184) (internal quotations omitted).

In this case, the magistrate court issued a warrant of attachment against Beck after the deputy clerk filed an affidavit alleging that she was in contempt. With respect to probable cause, the warrant stated:

> Based upon the Court's records and the Clerk's Affidavit filed in the above-entitled manner, this Court has found probable cause to believe the above-named Defendant has committed a Contempt of court, in violation of I.C. 7-601(5), by violating this Court's order requiring payment of certain fines, court costs, and/or other fees, totaling $643.72.

Thus, the magistrate court made the required finding regarding whether there was probable cause to believe that Beck was guilty of contempt. The question before this Court is whether the deputy clerk's affidavit provided a substantial basis for the probable cause determination.

The deputy clerk's affidavit contained no evidence concerning whether Beck *willfully* failed to pay the court-ordered fines, fees, and restitution. The affidavit alleged that a judgment was entered against Beck requiring her to pay fines, court costs, and restitution, and that she

11

violated the judgment by failing to pay them. The affidavit included the date that the judgment was entered and the statute under which she was convicted. It also alleged the amount that Beck was required to pay and that she had failed to do so. However, the affidavit contained no additional allegations of fact concerning whether Beck's failure to pay was willful.

Respondents contend that no such evidence was necessary for two reasons: (1) because willfulness is not an element of contempt as defined by Idaho Code section 7-601(5); and (2) because Idaho Criminal Rule 42(c)(2) does not require the affidavit to allege facts regarding willfulness.

With respect to their first argument, Respondents are correct that Idaho Code section 7-601(5) does not specifically provide that willfulness is an element of contempt. However, as mentioned above, both this Court's precedent and Idaho Criminal Rule 33 make clear that an individual may not be found in contempt for failing to pay fines or fees unless the failure was willful. I.C.R. 33(g)(1); *Wechsler*, 162 Idaho at 916, 407 P.3d at 230 (citation omitted). As such, we find Respondents' argument that willfulness is not an element of contempt unavailing.

Respondents' second argument, that Idaho Criminal Rule 42(c)(2) specifically provides that the deputy clerk's affidavit need not allege facts pertaining to willfulness, warrants a more in-depth discussion. As a starting point, Rule 42(c) provides for the commencement of contempt proceedings. With the exception of contempt for failure to appear in court, all contempt proceedings must be initiated by way of motion and affidavit setting forth specific facts that constitute the alleged contempt. I.C.R. 42(c)(2). As regards the specific facts that are required, Rule 42(c)(2) clarifies that the affidavit used to initiate contempt proceedings "need not allege facts showing that the respondent's failure to comply with the court order was willful." I.C.R. 42(c)(2). However, Rule 42(c)(2) only governs the *commencement* of contempt proceedings, not the issuance of a warrant of attachment. Rather, Idaho Criminal Rule 42(e) describes the findings that must be made before a warrant of attachment may be issued. Rule 42(e) provides that a warrant of attachment may only be issued upon a finding of probable cause that the person against whom the warrant will be entered committed the contempt. I.C.R. 42(e)(1)(A). As mentioned above, this requirement is constitutional in nature. The probable cause requirement contained within Rule 42(e) is merely an articulation of the constitutional principles in which it is rooted.

Respondents would have us interpret Rule 42(c)(2) as applying both to the initiation of contempt proceedings and to the issuance of a warrant of attachment. Under their interpretation, the portion of Rule 42(c)(2) that makes it unnecessary to allege facts concerning willfulness to initiate contempt proceedings would also dispense with the requirement that the magistrate court make a probable cause finding as to willfulness before issuing a warrant of attachment. We decline to adopt such an interpretation.

The interpretation of a court rule "must always begin with the plain, ordinary meaning of the rule's language." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). However, the meaning of the rule's language "may be tempered by the rule's purpose." *Id.* The purpose of the Idaho Criminal Rules is to "provide for the just determination of every criminal proceeding" and to "secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." I.C.R. 2(a). Furthermore, as when interpreting statutes, when faced with two possible interpretations of a court rule, one that would render the rule constitutional and the other unconstitutional, this Court will adopt the construction that is consistent with the constitution. *See State v. Prather*, 135 Idaho 770, 772, 25 P.3d 83, 85 (2001).

The Fourth Amendment to the United States constitution, article I, section 17 of the Idaho constitution, and Rule 42(e) require the magistrate court to make a probable cause determination regarding the elements of contempt—including willfulness—before issuing a warrant of attachment. Rule 42(c)(2) cannot negate that constitutional requirement, nor does the plain language of the rule attempt to do so. Rule 42(c)(2), by its own terms, applies only to the commencement of contempt proceedings. As such, its provisions are not applicable to the probable cause provision of Rule 42(e).

Alternatively, Respondents argue that an allegation of failure to pay, standing alone, provides a substantial basis for a magistrate court to determine that there was probable cause to believe that the failure was willful. In other words, Respondents contend that failure to pay court-ordered fines and fees, of which an individual has notice, constitutes prima facie evidence of willfulness. We disagree.

To determine that an individual has willfully disobeyed a court order by failing to pay fines and fees there must be at least some inquiry into why the person failed to pay. If an individual had the ability to pay, but neglected to do so, her failure could be deemed willful. However, an individual who is unable to pay, by no fault of her own and despite her best efforts

13

to do so, can hardly be said to have exhibited "indifferent disregard" or a "remissness and failure" in performance of the duty to pay. Under some circumstances, an affidavit containing an allegation that an individual has failed to pay court-ordered fines and fees, coupled with an allegation that the individual had the ability to pay them, may be sufficient to support a probable cause determination. However, the mere allegation that an individual failed to pay court-ordered fines and fees, as was before the magistrate court in this case, is not sufficient to provide a substantial basis for a probable cause determination with respect to willfulness.

In sum, the deputy clerk's affidavit did not provide the magistrate court with a substantial basis for its probable cause determination. As such, the magistrate court acted without or in excess of its jurisdiction in issuing a warrant of attachment against Beck based upon an unsupported finding of probable cause.

> *b. The magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment against Beck for failure to pay fines and fees in a criminal case without first conducting an ability-to-pay analysis.*

Second, Beck argues that the magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment against her for failure to pay fines and fees in a criminal case without first conducting an ability-to-pay analysis as required by the Equal Protection Clause of the United States Constitution.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. In light of this fundamental constitutional principle, Justice Black of the United States Supreme Court declared just over sixty-five years ago, that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956). The United States Supreme Court has since applied the Equal Protection Clause to strike down state practices determined to treat indigent defendants differently. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 244 (1970) (holding "that the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status"); *Tate v. Short*, 401 U.S. 395, 398 (1971) (quoting *Morris v. Schoonfield*, 399 U.S. 508, 509 (1970)) ("[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.").

14

The United States Supreme Court addressed an issue analogous to the issue in this case in *Bearden v. Georgia*, 461 U.S. 660 (1983). There, Bearden pleaded guilty to burglary and theft by receiving stolen property and the trial court sentenced him to probation. *Id.* at 662. The trial court also ordered him to pay a $500 fine and $250 in restitution as a condition of his probation. *Id.* Though he initially paid $200 towards the fine and restitution, he lost his job and was unable to make the remaining payments. *Id.* at 662–63. The trial court subsequently revoked Bearden's probation for failure to pay the remaining balance and sentenced him to serve the remaining part of his probationary period in prison. *Id.* at 663. On appeal, the United States Supreme Court reversed, reasoning that where "the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.* at 667–68. The Court was careful to distinguish between imprisoning those who willfully failed to pay and those who were unable to pay, describing the State as "perfectly justified in using imprisonment as a sanction to enforce collection" against the former, but proclaiming it "fundamentally unfair" to imprison the latter for failing to pay. *Bearden*, 461 U.S. at 668–69. In reversing the judgment, the Court focused on the trial court's failure to consider the reasons for Bearden's failure to pay:

> The focus of the court's concern, then, was that the petitioner had disobeyed a prior court order to pay the fine, and for that reason must be imprisoned. But this is no more than imprisoning a person solely because he lacks funds to pay the fine, a practice we condemned in *Williams* and *Tate*. By sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turned a fine into a prison sentence.

*Id.* at 674. Therefore, at least in the context of "revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay" before reinstating the probationer's sentence of imprisonment. *Id.* at 672.

Like in *Bearden*, where the defendant's initial sentence for burglary and theft included fines and restitution, rather than a period of incarceration, here, Beck was sentenced to pay fines, court costs, and restitution, rather than a period of incarceration in her misdemeanor frequenting case. Also, like in *Bearden*, where the court required the defendant to be incarcerated after he failed to pay the remainder of his fines and restitution, here, the magistrate court issued a warrant of attachment requiring Beck's incarceration after she failed to pay her fines and fees. In both

15

cases, the defendant was incarcerated without express findings regarding the defendant's ability and efforts to pay the amounts owed. *Id.* at 673–74.

Although the lower court's decision in *Bearden* occurred at a different procedural stage—a probation revocation hearing rather than an initial arrest—the reasoning applied by the United States Supreme Court on appeal applies equally to Beck's arrest. In *Bearden*, a court sentencing the defendant to imprisonment because he did not pay a fine, without considering the reasons that he failed to pay, violated the Fourteenth Amendment by effectively turning a fine into a prison sentence without due process. *Bearden*, 461 U.S. at 674. We hold that the magistrate court's issuance of the warrant of attachment against Beck, without considering the reasons that she failed to pay, violates the Fourteenth Amendment for the same reason; it effectively turned a fine into jail time without due process.

Respondents make several arguments as to why the warrant of attachment did not violate Beck's right to equal protection. First, Respondents quote from *Bearden* in support of the proposition that the State is "perfectly justified in using imprisonment as a sanction to enforce collection" where a defendant "has willfully refused to pay the fine or restitution when he has the means to pay" or has failed to make "sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution." *Id.* at 668–69. Respondents accurately quote from *Bearden*, and further argue that Beck had the ability to pay because there was evidence before the district court at the sentencing hearing that she was working at Burger King for $12.00 an hour.

A similar situation arose in *Bearden*, where the Court noted that the defendant and his wife both testified regarding their lack of income at the revocation hearing. 461 U.S. at 673. There, the sentencing court directly commented on the availability of "odd jobs such as lawn-mowing" at the hearing. *Id.* Nonetheless, the *Bearden* Court reversed because the sentencing court failed to make specific findings regarding the defendant's ability to pay and whether he made sufficient bona fide efforts to find work. *Id.* Despite the sentencing court's comments and the testimony before it, the Court declined to read an implied finding regarding the defendant's efforts to pay or obtain employment into the sentencing court's opinion. *Id.* at 673–74. As such, Respondents' arguments to the effect that the magistrate court conducted an implied or de facto ability-to-pay analysis at Beck's sentencing hearing runs contrary to the requirement in *Bearden*

16

that the decision to incarcerate an individual for failure to pay a fine include specific findings regarding the individual's ability and efforts to pay said fine.

Respondents also argue that Beck admitted her failure to pay was willful by entering an *Alford* plea, thus vitiating the need for an inquiry into Beck's ability to pay. *See North Carolina v. Alford*, 400 U.S. 25 (1970). However, using an admission made after an arrest to justify issuance of an arrest warrant in the first instance is to place the cart before the horse. While an *Alford* plea may foreclose Beck from raising a question regarding her ability to pay the fines and fees in a direct appeal of her conviction for contempt, it does not necessarily obviate the requirement that a magistrate court inquire into an individual's ability to pay before issuing a warrant of attachment. The constitutionality of the warrant of attachment must have been based solely upon the evidence before the magistrate court at the time it was issued, not evidence obtained after her eventual arrest. Thus, Beck's subsequent *Alford* plea is immaterial to the constitutionality of the arrest itself.

In sum, under *Bearden*, a court must inquire into an individual's ability and efforts to pay a court-ordered fine before issuing a warrant of attachment against the individual for failing to pay. At a minimum, a magistrate court's determination that an individual has the ability to pay court-ordered fines and fees must be based upon sufficient facts alleged in the deputy clerk's affidavit, or when available, facts testified to at a sentencing hearing. However, best practice would be for the magistrate court to issue a written notice to appear pursuant to Idaho Rule of Civil Procedure 75(c)(4) to show cause for the contempt before the warrant of attachment is issued. Where the deputy clerk's affidavit and other testimony are insufficient to support an ability-to-pay determination, such a hearing may well be the only means of complying with this constitutional requirement.

Accordingly, we conclude that the magistrate court acted in excess of its jurisdiction by issuing a warrant without making an ability-to-pay determination in this case.

> *c. The magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment without determining whether it was reasonable to believe that Beck would disregard a written notice to appear.*

Third, Beck argues that the magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment without making an adequate determination regarding whether it was reasonable to believe that she would disregard a written notice to appear.

17

In addition to requiring probable cause, Idaho Criminal Rule 42(e)(1) requires a magistrate court to determine that "there are reasonable grounds to believe that the respondent will disregard a written notice to appear" before issuing a warrant of attachment. I.C.R. 42(e)(1)(B). It is fundamental that affidavits must allege facts that justify a warrant before it can be issued. As Justice Taylor wrote nearly 100 years ago,

> he who sits in judgment at the halfway station as to the existence of "probable cause" must be the magistrate, and not the affiant who must bear the burden of facts up the mountain to that station, rather than his conclusions. He cannot leave at the foot of the mountain his load of facts, and, with lightened and easy steps, recite at the halfway station his conclusions as to facts which he does not choose to carry so far. The affiant's eyes, ears, and other senses and powers are the mere instruments for securing and conveying to the magistrate the facts which these senses have observed or recorded, and his mind is not the place for the conclusion to be reached, but the mind and brain of the magistrate must form and draw the conclusions from facts.

*State v. Arregui*, 44 Idaho 43, 63, 254 P. 788, 794–95 (1927). In other words, affidavits in support of a warrant must allege facts, not just conclusions that could be drawn from those facts. *State v. Guzman*, 122 Idaho 981, 984, 842 P.2d 660, 663 (1992).

Here, the deputy clerk's affidavit was devoid of any facts to support a determination that Beck would disregard a written notice to appear. As such, the magistrate court's determination had no factual basis. Accordingly, we conclude that the magistrate court acted in excess of its jurisdiction when it issued the warrant of attachment based upon a factually unsupported and therefore erroneous determination that it was reasonable to believe Beck would disregard a written notice to appear.

d. *The magistrate court acted in excess of its jurisdiction by issuing a warrant of attachment with an unconstitutional bail schedule.*

Fourth, Beck argues that the magistrate court acted without or in excess of its jurisdiction by issuing a warrant of attachment with an unlawful bail schedule. Specifically, Beck argues that the magistrate court impermissibly set two separate bail amounts, impermissibly required the "Amount for Expungement" to be paid "in cash," and set the bond amount unreasonably high.

Idaho Criminal Rule 42 provides that a court issuing a warrant of attachment for contempt "must set a reasonable bail, to be endorsed on the warrant at the time it is issued." I.C.R. 42(e)(2). When a warrant of attachment is issued for contempt with respect to nonpayment of any sum ordered by the court, "the court may endorse on the warrant that on payment of a specified sum of money, not exceeding the amount owing, the contempt will be purged, the

18

defendant must be released, and . . . need not appear in court in the contempt proceeding." I.C.R. 42(e)(3). Finally, when setting bail, a court "must not require that bail be posted only in cash, nor may the court specify differing amounts for bail depending on whether it is posted in form of cash" or otherwise. I.C.R. 46(f).

To begin, Beck's contention that the magistrate court unlawfully set two separate bail amounts in violation of Idaho Criminal Rule 46(f) is without merit. Rule 42(e)(2) requires a court issuing a warrant of attachment in a contempt case to set a reasonable amount for bail. In addition, when the warrant of attachment is issued in a contempt case for nonpayment of a court-ordered sum, the court *may also* include a provision allowing the contempt to be purged upon payment of an amount ("the purge amount") equal to or less than the unpaid sum. I.C.R. 42(e)(3). Thus, the criminal rules indicate that bail and the purge amount are distinct and both can be included on the same warrant of attachment where appropriate. Otherwise, under Beck's interpretation of the rules, Rule 42(e)(3) would be a nullity because a court would never be able to include a purge amount on a warrant of attachment unless it did not set a bail amount. Accordingly, we conclude that the criminal rules authorize a court to set both a reasonable bail amount and a purge amount on the same warrant of attachment in contempt cases for nonpayment of court-ordered fees.

Likewise, Beck's argument that the magistrate court impermissibly mandated the "amount to expunge" be paid in cash is unfounded. As discussed above, reasonable bail and the purge amount are distinct items. To the extent that the rules prohibit requiring payment in cash, they speak only of bail. I.C.R. 46(f) ("The court must not require that bail be posted only in cash . . . ."). Thus, there is no restriction in the rules as to how the court may require the purge amount to be paid because that sum is not bail.

Finally, Beck assails the constitutionality of the magistrate court's bail schedule on Equal Protection grounds. As discussed above, The United States Supreme Court held in *Tate v. Short* that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." 401 U.S. at 398. The facts of this case bear out such a result.

Beck's purge amount was set at $643.72, the amount of court-ordered fines and fees owed. Beck's bail amount was set at $6,400, or roughly ten times the purge amount. Although the magistrate court did not make findings on the record as to why the bail amount was set at

$6,400, we think it an unlikely coincidence that the prevailing rate charged by bail bond agents to post a bond is 10% of the bail amount.[5] Thus, Beck's choices when presented with her warrant of attachment were to (1) pay $643.72 to purge the contempt; (2) pay roughly $640 to a bail bond agent to post bail; or (3) go to jail. In other words, the bail amount set by the magistrate court had the practical effect of converting Beck's court-ordered fines into jail time if she could not afford to pay roughly $640. As a result, the magistrate court acted in excess of its jurisdiction by setting an unconstitutional bail amount with the practical effect of placing Beck in jail if she could not afford to pay the full amount of her fines without a due process consideration of her ability to pay.

> *e. The magistrate court acted without or in excess of its jurisdiction by initiating a contempt prosecution based upon an affidavit filed by the deputy court clerk.*

Finally, Beck argues that the magistrate court acted without or in excess of its jurisdiction by allowing the deputy clerk to initiate a contempt prosecution against her by filing a motion and affidavit. Specifically, Beck argues that the contempt prosecution should have been initiated by motion of the Elmore County Prosecutor, not a deputy court clerk. Beck also argues that the deputy clerk, in filing the motion and affidavit, engaged in the practice of law without a license. We conclude that the magistrate court acted without jurisdiction by initiating contempt proceedings against Beck without a motion filed by the Elmore County Prosecutor.

Idaho Code section 3-420 prohibits a person from engaging in the practice of law without first being admitted and holding a valid license. I.C. § 3-420. The practice of law is generally understood to include "doing or performing services in a court of justice" in any matter pending before the court, "throughout its various stages, and in conformity with the adopted rules of procedure." *Idaho State Bar v. Meservy*, 80 Idaho 504, 508, 335 P.2d 62, 64 (1959) (quotation and citations omitted). The clerk of the district court and, by extension, deputy court clerks, are judicial officials. *Estep v. Comm'rs of Boundary Cnty.*, 122 Idaho 345, 346–47, 834 P.2d 862, 863–64 (1992). However, judicial officials may not necessarily practice law unless they are duly licensed and admitted to practice in the state. *See In re Brainard*, 55 Idaho 153, 156–67, 39 P.2d 769, 770–71 (1934) (imposing disciplinary sanctions on a former lay probate judge who had held himself out as an attorney without being licensed to practice in the state).

---

[5] This fact is not in the record but we take judicial notice of this fact as one generally known within this Court's jurisdiction. *See* I.R.E. 201(b)(1).

Idaho Criminal Rule 42 governs contempt proceedings brought in connection with criminal proceedings. I.C.R. 42. For contempt committed outside the presence of the court, all proceedings, except for cases concerning contempt for failing to appear in court, "must be commenced by a motion *and* affidavit." I.C.R. 42(c)(2) (emphasis added). The prosecution of all actions, applications, or motions within a county, whether civil or criminal, falls squarely within the duties of the appropriate prosecuting attorney where the state or county are parties or have an interest in a case. I.C. § 31-2604. As such, it is the prosecutor's responsibility to initiate contempt proceedings as described in Rule 42(c)(2).

The magistrate court in this case issued a warrant of attachment against Beck after receiving a document entitled "Motion and Affidavit in Support of Contempt Proceedings" from the deputy clerk. Although the deputy clerk's filing was titled as a "motion," upon careful inspection, it is evident the filing was merely an affidavit, not a motion. The filing consisted of five numbered declarations of fact, an allegation that Beck was in contempt, and a certification under penalty of perjury that the information contained therein was true and correct. Nowhere within the filing does the deputy clerk move the magistrate court to take any judicial action. Rather, the filing merely states that Beck "should be dealt with according to law."

Having reviewed the deputy clerk's affidavit, we think it unlikely that the deputy clerk intended anything but to inform the magistrate court as to Beck's failure to pay court-ordered fines and fees. Regardless, we need not determine whether the deputy clerk engaged in the practice of law without a license because such a conclusion has no impact on our decision. We do note, however, that the deputy clerk was doing nothing more than following outdated procedures of the magistrate court in filing the "Motion and Affidavit." Proper procedure would have been for the deputy clerk to supply the Elmore County Prosecutor with an affidavit containing pertinent factual allegations, which could then be filed with the magistrate court as an attachment to a motion filed by the State requesting that contempt proceedings be initiated against Beck.

Having concluded that the deputy clerk's filing was an affidavit, not a motion, and with no motion properly brought by the Elmore County Prosecutor, we can only conclude that the magistrate court acted without jurisdiction in commencing contempt proceedings against Beck under Rule 42(c)(2).

2. Beck is without a plain, speedy and adequate remedy in the ordinary course of law.

"Writs of prohibition are extraordinary and are issued with caution." *Gibbons*, 140 Idaho at 318, 92 P.3d at 1065. "[A] writ of prohibition will issue only if no plain, speedy and adequate remedy at law is available." *Clark v. Ada Cnty. Bd. of Comm'rs*, 98 Idaho 749, 753, 572 P.2d 501, 505 (1977); I.C. § 7-402. While a writ of prohibition is inappropriate where an alternative remedy exists, that "remedy must be evident, obvious, simple or not complicated." *Wasden ex rel. State v. Idaho State Bd. of Land Comm'rs*, 150 Idaho 547, 552, 249 P.3d 346, 351 (2010). Ordinarily, an appeal "'is regarded as a plain, speedy and adequate remedy at law in the absence of a showing of exceptional circumstances or of the inadequacy of an appeal to protect existing rights.'" *Dist. Ct. of Fourth Jud. Dist.*, 143 Idaho at 698, 152 P.3d at 569 (quoting *Rufener v. Shaud*, 98 Idaho 823, 825, 573 P.2d 142, 144 (1977)). "[T]he burden is on the petitioner to show that his . . . remedy is inadequate." *Clark*, 98 Idaho at 754, 572 P.2d at 506 (citation omitted).

In her petition, Beck notes that she still owes the underlying debt that led to the contempt proceedings, and, as a result of those proceedings, Respondents authored a nearly identical deferred payment agreement which indicates an arrest warrant may be issued for her failure to pay. In short, Beck implores this Court to focus on the preventative nature of the relief she requests; that is, she does not assert a direct challenge to the constitutionality of the previous contempt proceedings, only that Respondents be prohibited from initiating similar proceedings against her in the future.

We conclude that Beck has carried her burden of demonstrating that no plain, speedy, and adequate remedy exists at law other than a writ of prohibition. Although Beck could have appealed her conviction for contempt, appealing from that conviction would not afford Beck protection from the constitutional violations she alleges. In other words, an appeal from her conviction would be inadequate to protect her existing rights. *See Dist. Ct. of Fourth Jud. Dist.*, 143 Idaho at 698, 152 P.3d at 569. Beck's Fourth Amendment rights were violated by Respondents issuing a warrant of attachment without probable cause and detaining her without probable cause. These specific violations would not be remedied by application of the exclusionary rule[6] as they did not produce evidence, and thus would not have an impact on the

---

[6] The exclusionary rule is a remedy for Fourth Amendment violations that prevents "[e]vidence obtained in violation of the Fourth Amendment" from being admitted at trial. *State v. Cohagen*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017). The exclusionary rule is intended "to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (quotation omitted). Thus, the

22

factual basis for her contempt conviction. Therefore, whether Beck's warrant and subsequent detention violated the Fourth Amendment would not be at issue in an appeal from her conviction and, consequently, an appeal would not offer relief from future unconstitutional proceedings against her.

Under these circumstances, a defendant may ordinarily be expected to file a petition for post-conviction relief or a federal habeas corpus petition. However, both of these avenues are closed to Beck. Under the Uniform Post-Conviction Procedure Act ("UPCPA"), a person convicted of a crime may challenge that conviction on various constitutional and statutory grounds. *See* I.C. § 19-4901. However, UPCPA does not provide relief on the basis of an unlawful arrest alone. *Walker v. State*, 92 Idaho 517, 519, 446 P.2d 886, 888 (1968) (denying relief under Idaho Code section 19-4901 and reasoning that "Idaho has consistently held that unlawful arrest cannot be successfully raised by habeas corpus, because once the court obtained jurisdiction, it is immaterial how it was obtained."). Similarly, a jurisdictional prerequisite for federal habeas relief is that a defendant be in custody; thus, such relief is unavailable for those whose sentence has already expired, like Beck. *Maleng v. Cook*, 490 U.S. 488, 490–92 (1989) (holding that a habeas petitioner does not remain "'in custody' under a conviction after the sentence imposed for it has fully expired[.]").

Furthermore, Respondents' other proffered remedy—that Beck could have filed a motion for release pending the contempt proceedings—does not adequately address Beck's constitutional concerns. Such a motion is inadequate under the facts of this case considering Beck spent seven days in jail (two more than the statutory maximum sentence for her conviction) by the time she appeared before the Elmore County magistrate court to plead guilty. Thus, if Beck had filed a motion for release, it still would not have prevented her unconstitutional detention. In any event, while a motion for release could have hypothetically prevented Beck from being detained for an even longer period of time without pleading guilty to contempt, it would not allow a court to address the merits of Beck's argument—that the practices and procedures of Respondents in issuing arrest warrants for failure to pay fines and fees are constitutionally infirm. In other words, the grant of a motion for release is not an adequate remedy for a defendant seeking to challenge the underpinnings of their arrest warrant, nor is it a

---

exclusionary rule offers no remedy when "[a]n error of constitutional dimensions" is made by a judge as opposed to police officers. *Id.*

vehicle to prevent such warrants from issuing in the future under other deferred payment agreements.

Respondents also argue that a writ of prohibition is unavailable to Beck because she waived any non-jurisdictional challenge she may have had to her contempt proceedings by pleading guilty. However, as discussed above, Beck's challenges to her arrest and detention are not readily brought after contempt proceedings have been initiated because an unlawful arrest cannot be used to disturb a conviction. *See Walker*, 92 Idaho at 519, 446 P.2d at 888 ("[O]nce the court obtained jurisdiction, it is immaterial how it was obtained[.]"). Further, Beck seeks to prevent Respondents from issuing new warrants of attachment for contempt using the same deficient procedures as the first warrant, not to vacate the result of her contempt conviction. Accordingly, if Beck waived any non-jurisdictional attacks she had against her conviction by pleading guilty, that waiver is immaterial to the relief she now requests from this Court, which is exclusively forward looking.

In sum, Beck has carried her burden of demonstrating that no plain, speedy, or adequate remedy existed to provide her relief. The core of Beck's petition is a request for preventative relief. That is, she seeks to stop Respondents from arresting her for criminal contempt in the future using the practices described throughout this opinion. Neither a direct appeal from her conviction, nor other typical remedies sought by criminal defendants like a petition for post-conviction relief, would adequately provide the requested relief.

## IV.    CONCLUSION

For the reasons stated above, we hold that the magistrate court acted without or in excess of its jurisdiction in issuing the warrant of attachment against Beck and she is without another plain, speedy and adequate remedy in the ordinary course of law. Beck's petition for writ of prohibition is granted and a final writ of prohibition will be issued preventing the magistrate court from issuing warrants of attachment inconsistent with the procedural and constitutional safeguards discussed herein.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**

24

# APPENDIX A

December 11, 2020

## Elmore County Criminal Contempt Policy in Misdemeanor Cases

This policy is intended to minimize the costs associated with the incarceration of individuals related to allegations of failure to pay court ordered fines. costs, or fees in misdemeanor cases.

1. No proceedings for criminal contempt in misdemeanor cases in Elmore County will be initiated by the filing of an affidavit generated by the Elmore County Clerk's Office.

2. Proceedings for contempt based solely upon the failure to pay fines. fees, or costs in misdemeanor cases are to be initiated by motion and affidavit of the proper prosecuting authority and not by the Clerk of the Elmore County Court. I.C.R. 42(c)(2). *See also* I.C.R. 33(g)(1).

3. The defendant involved in contempt proceedings for failure to pay fines. fees, or costs initiated by the appropriate prosecuting authority in misdemeanor cases, will be brought before the Court based upon the issuance and personal service of an order to show cause for the appearance before the Court. *See* I.C.R. 42(d)(1).

4. The first time a defendant fails to appear for a contempt hearing for failure to pay fines. costs, or fees in a misdemeanor case, if the Court is going to issue a warrant of attachment for his arrest, which may be in the same form as an arrest warrant (*see* I.C.R. 42(e)(1)) it should consider using a ROR warrant.

Hon. Theodore Fleming
Magistrate Judge

Hon. Brent Ferguson
Magistrate Judge

Approved by:

Hon. Steven J. Hippler
Administrative District Judge

25